Gurpreet Kaur, Esq.
Kaur Legal Group, PC
674 County Square Dr, Suite 305
Ventura, CA 93003
Ph. 805-300-9003; Cell 909-997-4570
Fax: 805-716-6100
E-mail: gurpreetkauresq@gmail.com
*Attorney for Petitioner*

**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MANDEEP SINGH<br><br>Petitioner,<br>v.<br>MARK BOWEN, Acting-Warden of the Adelanto Detention Center; DAVID J. VENTURELLA, Acting Director of Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary of the U.S. Department of Homeland Security; TODD BLANCHE, Attorney General of the United States<br><br>Respondents. | Civil Action No.<br><br>**VERIFIED PETITION FOR HABEAS CORPUS** |

## INTRODUCTION

1. Petitioner Singh, a native and citizen of India, is unlawfully detained by Respondents in violation of the Fifth Amendment's Due Process Clause and the Immigration and Nationality Act ("INA"). After approximately fourteen years of living in the United States following his release on immigration parole, maintaining family and community ties, complying with ICE supervision requirements, and pursuing lawful immigration proceedings, Petitioner was abruptly re-detained by Immigration and Customs Enforcement ("ICE") on August 20, 2026, while attending a scheduled affirmative asylum interview. His detention occurred without advance notice, without an individualized pre-deprivation

hearing, and without any disclosed finding that he presented a danger to the community, a flight risk, or had violated any condition of his prior release.

2. On February 19, 2012, Petitioner presented himself to immigration authorities at the Nogales, Arizona, port of entry and sought permission to enter the United States. Following brief detention pursuant to a Form I-200, DHS affirmatively exercised its authority to release Petitioner on parole, documented by Form I-194 and an Order of Release on Parole. Petitioner was thereafter permitted to reside in the United States subject to Alternatives to Detention ("ATD"), regular ICE reporting requirements, and continued immigration supervision. Petitioner complied with these requirements without violation and remained available to immigration authorities for approximately fourteen years.

3. DHS served Petitioner with a Notice to Appear ("NTA") on March 9, 2012, charging him solely under INA § 212(a)(7)(A)(i)(I). On October 5, 2023, an Immigration Judge dismissed his removal proceedings pursuant to the government's then-existing prosecutorial discretion policies. Petitioner appealed that decision to the Board of Immigration Appeals ("BIA"), where the appeal remains pending. Meanwhile, Petitioner affirmatively pursued asylum before U.S. Citizenship and Immigration Services ("USCIS"), maintained employment authorization based on his pending asylum application, and continued complying with his immigration obligations.

4. On August 20, 2026, Petitioner voluntarily appeared for his scheduled asylum interview, demonstrating his continued willingness to participate in the immigration process. Rather than permit Petitioner to proceed through the ordinary adjudicatory process, immigration authorities took him into custody and transferred him to ICE. When Petitioner requested an explanation for his arrest and presented his employment authorization, ICE officers failed to provide a meaningful explanation or afford him an opportunity to contest the asserted basis for his detention. No individualized pre-deprivation hearing was conducted, and Petitioner was given no advance notice that his longstanding liberty would be revoked.

5. Respondents' actions deprived Petitioner of the liberty he had enjoyed for approximately fourteen years under DHS's own affirmative release determination. DHS has identified no violation of Petitioner's parole conditions, failure to report, attempt to abscond, criminal conviction, or materially changed circumstance requiring his immediate re-detention. Although Petitioner was arrested in 2016, the criminal case was dismissed. Petitioner has established substantial family ties, including his wife and children, maintains gainful employment, and has consistently complied with the government's supervision requirements.

6. The statutory basis for Petitioner's renewed detention is disputed. Although DHS initially classified Petitioner as an arriving alien charged under INA § 212(a)(7)(A)(i)(I), Petitioner had been released on parole for approximately fourteen years before his re-detention. Respondents may invoke 8 U.S.C. § 1225(b), including the agency interpretations reflected in *Matter of Yajure Hurtado* and *Matter of Q. Li*, together with DHS's July 8, 2025 Interim Guidance, to assert mandatory detention and deny access to an Immigration Judge's custody redetermination. Petitioner disputes the application of that asserted detention authority to his circumstances and maintains that his detention must be evaluated under the applicable statutory framework, including 8 U.S.C. § 1226(a), to the extent governing his present custody. Independently, the government's invocation of a mandatory detention provision does not itself resolve Petitioner's constitutional challenge to the abrupt revocation of his longstanding liberty without individualized pre-deprivation procedures.

7. This Petition does not merely challenge Petitioner's eligibility for a future bond hearing. It challenges Respondents' decision to extinguish an established liberty interest without advance notice, without an individualized opportunity to be heard, and without any demonstrated exigency justifying immediate detention. A subsequent bond hearing, even if made available, would not necessarily remedy the constitutional injury arising from the government's failure to provide adequate procedures before

depriving Petitioner of the liberty DHS had previously granted.

8. Petitioner therefore seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ordering his immediate release from ICE custody and restoration of the status quo ante, including the noncustodial supervision conditions under which he resided before August 20, 2026. Petitioner further seeks appropriate protection against renewed detention based upon the same circumstances without constitutionally adequate pre-deprivation procedures, absent genuine exigent circumstances.

## JURISDICTION

9. This action arises under the Constitution of the United States and the INA, 8 U.S.C. § 1101 *et seq*.

10. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause).

11. This Court has authority under 28 U.S.C. § 2241 to grant the writ, order Petitioner's release from unlawful custody, and grant such ancillary relief as is necessary to effectuate its habeas jurisdiction.

## VENUE

12. Venue is proper because Petitioner is detained in Adelanto Detention Facility, which is within the jurisdiction of this District. Venue is also proper in this District because Respondents are officers, employees, or agencies of the United States. *See* 28 U.S.C. § 1391(e).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

13. Petitioner challenges the legality of his present physical detention and the deprivation of his previously granted liberty without constitutionally adequate pre-deprivation procedures. He does not seek review of the merits of his pending asylum application or the underlying immigration proceedings.

14. Petitioner has not been afforded an individualized custody hearing addressing the

constitutional deficiencies challenged in this Petition. To the extent Respondents assert that Petitioner is detained under 8 U.S.C. § 1225(b) as an arriving alien, ordinary Immigration Judge custody-redetermination procedures may be unavailable to him. See 8 C.F.R. § 1003.19(h)(2)(i)(B).

15. Exhaustion under 28 U.S.C. § 2241 in this context is prudential rather than an express statutory prerequisite. Petitioner submits that exhaustion should be excused because the constitutional deprivation alleged here arises from the absence of required pre-deprivation procedures, further administrative proceedings would not necessarily remedy that completed deprivation, and continued detention while pursuing potentially unavailable or inadequate remedies would prolong the asserted constitutional injury.

16. Accordingly, Petitioner respectfully requests that this Court exercise its habeas jurisdiction and adjudicate the legality of his continued detention without requiring further administrative exhaustion.

## PARTIES

17. Respondent Mark Bowen is sued in his official capacity as Acting-Warden of the Adelanto Detention Facility. Respondent Bowen is the physical custodian of Petitioner.

18. Respondent David Venturella is sued in his official capacity as the Acting Director of U.S. Immigration and Customs Enforcement. Respondent Venturella is a legal custodian of Petitioner and has authority to release him.

19. Respondent Mullin is sued in his official capacity as the Secretary of the U.S. Department of Homeland Security. In this capacity, Respondent Mullin is responsible for the implementation and enforcement of the INA, and oversees ICE, the component agency responsible for Petitioner's detention and custody. Respondent Mullin is a legal custodian of Petitioner.

20. Respondent Todd Blanche is sued in his official capacity as the Attorney General of the United States and the senior official of the U.S. Department of Justice. In that capacity, he has the authority

to adjudicate removal cases and to oversee the Executive Office for Immigration Review ("EOIR"), which administers the immigration courts and the BIA. Respondent Blanche is a legal custodian of Petitioner.

## STATEMENT OF FACTS

21. Petitioner Singh is a native and citizen of India who has resided in the United States since February 19, 2012. He has established substantial family and community ties, including his wife and children, and has maintained gainful employment while pursuing immigration relief.

22. On or about February 19, 2012, Petitioner presented himself to immigration authorities at the Nogales, Arizona, port of entry and sought permission to enter the United States. Petitioner was processed as an arriving alien and briefly detained pursuant to a Form I-200, Warrant for Arrest of Alien.

23. Following that initial detention, DHS exercised its discretion to release Petitioner on immigration parole, documented by Form I-194 and an Order of Release on Parole. DHS thereby made an affirmative determination permitting Petitioner to reside in the United States subject to immigration supervision rather than continued physical detention.

24. As conditions of his release, Petitioner was enrolled in Alternatives to Detention ("ATD") and required to report to ICE as directed. Petitioner complied with all applicable reporting and supervision requirements. He did not abscond, violate his reporting obligations, or otherwise breach the conditions of his release.

25. On March 9, 2012, DHS served Petitioner with a Notice to Appear (Form I-862), charging him solely under INA § 212(a)(7)(A)(i)(I), based on his alleged lack of valid entry documentation. Petitioner was not charged with any criminal ground of inadmissibility.

26. Following his release, Petitioner remained in the United States under the government's supervision for approximately fourteen years. Throughout that period, Petitioner attended his required ICE appointments, complied with ATD obligations, maintained stable family and community ties, and

remained available to immigration authorities.

27. In 2016, Petitioner was arrested in connection with a criminal matter. However, the criminal proceedings were subsequently dismissed, and the arrest did not result in a criminal conviction. DHS did not revoke Petitioner's release at that time, and Petitioner continued living in the community under immigration supervision.

28. On October 5, 2023, an Immigration Judge dismissed Petitioner's removal proceedings pursuant to the government's then-existing prosecutorial discretion policies, under which the Office of Chief Counsel could seek dismissal of cases that were not designated enforcement priorities.

29. Petitioner appealed the Immigration Judge's dismissal decision to the Board of Immigration Appeals. That appeal remains pending. Accordingly, the procedural posture of Petitioner's removal proceedings remains subject to the BIA's disposition of that appeal.

30. While his BIA appeal remained pending, Petitioner affirmatively pursued asylum before USCIS. He submitted an affirmative asylum application, obtained employment authorization based on his pending asylum application, and continued pursuing relief through the administrative process.

31. Throughout this period, Petitioner remained compliant with ICE reporting requirements. He maintained gainful employment, supported his family, and continued residing in the United States without any identified violation of his prior release conditions.

32. On August 20, 2026, Petitioner voluntarily appeared for a previously scheduled asylum interview at the asylum office. His appearance was consistent with his longstanding history of complying with immigration requirements and participating in proceedings concerning his immigration status.

33. During that scheduled asylum appointment, immigration authorities unexpectedly detained Petitioner and transferred him to ICE custody. Petitioner had received no prior notice that his parole-based liberty would be revoked or that he would be taken into immigration detention at the appointment.

34. After being taken to the ICE office, Petitioner asked officers to explain the reason for his arrest and detention. The officers did not provide him with a meaningful explanation identifying any violation of his release conditions, any new criminal conduct, or any individualized circumstance requiring immediate detention.

35. Petitioner informed the ICE officers that he had a pending asylum application and presented his valid employment authorization documentation. Despite his efforts to explain his immigration circumstances, officers proceeded with his detention without providing him a meaningful opportunity to respond to the asserted basis for his re-detention.

36. Before revoking Petitioner's longstanding liberty, Respondents did not provide him with an individualized pre-deprivation hearing before a neutral decisionmaker. Petitioner was not afforded an opportunity to present evidence of his compliance, family ties, employment, pending immigration proceedings, or the absence of circumstances warranting renewed detention.

37. At the time of his re-detention, Petitioner had not failed to appear for any required ICE appointment, had not absconded, and had not been convicted of any criminal offense arising from his 2016 arrest. His continued compliance and voluntary appearance for his asylum interview demonstrated his willingness to remain available to immigration authorities.

38. Petitioner's detention occurred against the backdrop of DHS's July 8, 2025 Interim Guidance and the agency's interpretations of immigration detention authority, including *Matter of Yajure Hurtado* and *Matter of Q. Li*. Respondents' potential reliance on 8 U.S.C. § 1225(b), rather than § 1226(a), raises a disputed question concerning the statutory authority governing Petitioner's renewed detention following his longstanding release on parole.

39. Regardless of that statutory dispute, Petitioner had enjoyed approximately fourteen years of liberty pursuant to DHS's own release decision. The government revoked that liberty without advance

notice, without an individualized pre-deprivation hearing, and without identifying an emergency or exigent circumstance requiring immediate incarceration before Petitioner could be heard.

40. Petitioner has remained continuously detained since August 20, 2026. His detention has separated him from his wife and children, disrupted his employment, and deprived him of the liberty he had exercised under government supervision for approximately fourteen years.

41. Petitioner does not seek judicial review of the merits of his asylum application or the BIA's pending administrative proceedings. Rather, he challenges the independent legality of his physical detention, the procedures employed to revoke his previously granted liberty, and Respondents' asserted statutory authority to continue detaining him.

42. Respondents' continued detention of Petitioner, without constitutionally adequate procedures and without an individualized justification for the abrupt revocation of his longstanding liberty, violates the Fifth Amendment's guarantee of due process. Petitioner therefore seeks immediate release from ICE custody and restoration of his previously enjoyed liberty under appropriate noncustodial immigration supervision conditions.

43. Petitioner's initial release on parole is documented by his Form I-94, bearing the official Department of Homeland Security parole stamp. Following that release, Petitioner remained in the United States under immigration supervision and complied with applicable reporting requirements for approximately fourteen years.

44. Petitioner has not received any separate written notice expressly terminating or revoking his parole in connection with his August 20, 2026 re-detention. Nor did ICE officers provide Petitioner with a written explanation identifying the legal or factual basis for revoking his previously granted liberty when he appeared for his scheduled asylum interview.

45. The Executive Office for Immigration Review's Automated Case Information system

confirms that an Immigration Judge ordered dismissal of Petitioner's removal proceedings on October 5, 2023. The same record confirms that an appeal was received by the Board of Immigration Appeals on November 3, 2023, and remains pending. No future immigration court hearings are currently scheduled.

46. Notwithstanding his documented release history, longstanding compliance with ICE supervision, pending administrative proceedings, family responsibilities, and employment, Respondents re-detained Petitioner on August 20, 2026, without advance notice or an individualized pre-deprivation hearing. Petitioner seeks restoration of his previously granted liberty and challenges Respondents' statutory and constitutional authority to continue his detention.

## STATUTORY FRAMEWORK AND LEGAL ARGUMENT

47. The Immigration and Nationality Act ("INA") establishes distinct statutory authorities governing immigration detention, including detention of applicants for admission under 8 U.S.C. § 1225(b), discretionary detention pending removal proceedings under 8 U.S.C. § 1226(a), mandatory detention of specified categories of noncitizens under § 1226(c), and detention following an administratively final removal order under 8 U.S.C. § 1231(a). These statutory provisions must be construed consistently with the Fifth Amendment's guarantee that no person shall be deprived of liberty without due process of law.

48. Congress separately authorized the Secretary of Homeland Security to parole applicants for admission into the United States temporarily, on a case-by-case basis, for urgent humanitarian reasons or significant public benefit. 8 U.S.C. § 1182(d)(5)(A). Although immigration parole does not constitute admission, it permits an individual to live outside physical immigration custody subject to conditions imposed by DHS. The governing regulations contemplate individualized parole determinations, community ties, and compliance with reporting obligations. See 8 C.F.R. § 212.5(b), (d).

49. Petitioner Singh presented himself to immigration authorities at the Nogales, Arizona, port

of entry on February 19, 2012, and sought permission to enter the United States. Following brief detention, DHS exercised its statutory parole authority and released Petitioner into the United States, as documented by his Form I-94 bearing an official parole stamp. Petitioner was thereafter subject to ATD and ICE reporting requirements, which he consistently satisfied.

50. DHS's decision to release Petitioner was an affirmative exercise of its statutory discretion. For approximately fourteen years thereafter, Petitioner lived in the community, complied with immigration supervision, maintained gainful employment, established substantial family ties, and remained available to immigration authorities. His release was not the product of evasion or unauthorized departure from custody; it resulted from the government's own determination to permit him to remain outside physical detention.

51. The regulations governing termination of immigration parole distinguish between automatic termination upon expiration of the authorized parole period and discretionary termination upon written notice. See 8 C.F.R. § 212.5(e)(1)–(2). Petitioner acknowledges that expiration of an authorized parole period may result in automatic termination without separate written notice. Nevertheless, the expiration of a parole document does not itself resolve whether the government's subsequent decision to re-detain a previously released individual complies with the Fifth Amendment. Petitioner has received no separate parole-revocation notice in connection with his August 20, 2026 detention and disputes the constitutional adequacy of the procedures employed to deprive him of his longstanding liberty.

52. The INA also authorizes detention pending a decision on removal under 8 U.S.C. § 1226(a). Section 1226(a) permits detention or discretionary release during qualifying pre-final-order proceedings. The applicability of § 1226(a), as distinguished from § 1225(b), depends upon the statutory circumstances governing the particular noncitizen's custody. Petitioner disputes Respondents' asserted authority to impose mandatory detention based solely on his historical classification as an arriving alien,

without adequately addressing his subsequent parole, prolonged supervised residence, and circumstances of re-detention.

53. Section 1225(b) separately governs detention of certain applicants for admission. Petitioner recognizes that his initial processing at a port of entry and charge under INA § 212(a)(7)(A)(i)(I) present a materially different statutory posture from that of a noncitizen who entered without inspection and was later apprehended in the interior. Nevertheless, the existence of statutory detention authority does not, standing alone, determine the constitutional adequacy of procedures used to revoke longstanding liberty previously granted by the government.

54. The Ninth Circuit recently clarified the statutory distinction between detention under 8 U.S.C. § 1225(b)(2)(A) and detention under § 1226(a). In *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160 (9th Cir. 2026), the court rejected DHS's July 2025 interpretation that all noncitizens present without admission remain subject to mandatory detention under § 1225(b)(2)(A). The court held that noncitizens present without admission who are apprehended in the interior of the United States are governed by § 1226 rather than § 1225(b)(2)(A).

55. Central to the Ninth Circuit's reasoning was its distinction between the statutory designation of an individual as an "applicant for admission" under § 1225(a)(1) and the separate statutory requirement that an individual be "seeking admission" under § 1225(b)(2)(A). The court explained that the latter language has historically been associated with individuals seeking entry into the United States at the border. Thus, classification as an applicant for admission does not, by itself, conclusively establish that § 1225(b)(2)(A) governs every subsequent detention.

56. Petitioner acknowledges that his circumstances differ from those of the plaintiffs in *Rodriguez Vazquez*. Unlike individuals who entered without inspection, Petitioner presented himself at a designated port of entry in February 2012 and was subsequently released on parole pursuant to DHS's

affirmative statutory authority under 8 U.S.C. § 1182(d)(5)(A). Nevertheless, the Ninth Circuit's distinction between an individual's immigration classification and the detention authority applicable at the time of apprehension is relevant to Petitioner's renewed detention approximately fourteen years after his original border processing.

57. Petitioner was not apprehended while attempting to enter the United States in August 2026. Instead, he voluntarily appeared for a scheduled affirmative asylum interview after approximately fourteen years of residence under government supervision. DHS had previously exercised its discretion to release him, and Petitioner consistently complied with the conditions of his release. Petitioner therefore disputes Respondents' anticipated position that his original arriving-alien classification, without further analysis of his subsequent parole and the circumstances of his renewed detention, conclusively establishes mandatory detention under § 1225(b)(2)(A).

58. *Rodriguez Vazquez* does not independently resolve the statutory classification of every previously paroled arriving alien. It does, however, require careful attention to the text, context, and statutory basis for the government's asserted detention authority. Petitioner's challenge further presents an independent Fifth Amendment question: whether the government may revoke approximately fourteen years of previously authorized liberty without constitutionally adequate pre-deprivation procedures.

59. Accordingly, even if Respondents contend that § 1225(b) governs Petitioner's present detention, that assertion does not dispose of his independent constitutional challenge. Petitioner seeks immediate release and restoration of his prior supervised liberty because Respondents deprived him of that liberty without adequate notice, an individualized opportunity to be heard, or any identified exigent circumstance requiring immediate re-detention.

60. The Board of Immigration Appeals addressed detention of applicants for admission in *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025), and *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025).

Those decisions concern the allocation of statutory detention authority and the scope of Immigration Judges' custody jurisdiction. They do not adjudicate Petitioner's distinct constitutional claim arising from approximately fourteen years of government-authorized liberty followed by re-detention without advance notice or an individualized opportunity to contest the deprivation. Nor do those administrative decisions foreclose federal habeas review of substantial constitutional claims.

61. DHS's July 8, 2025 Interim Guidance Regarding Detention Authority for Applicants for Admission likewise cannot displace the Constitution or independently establish the lawfulness of Petitioner's renewed detention. An agency's interpretation of statutory detention authority remains subject to judicial review of questions of law. See *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024). Regardless of the statutory interpretation adopted by DHS, the government must exercise its detention authority consistently with applicable constitutional protections.

62. The INA separately provides for detention following an administratively final order of removal under 8 U.S.C. § 1231(a). Here, the Immigration Judge dismissed Petitioner's removal proceedings on October 5, 2023, and an appeal received by the BIA on November 3, 2023, remains pending. The record presently identifies no administratively final removal order against Petitioner. Accordingly, Respondents have not established that Petitioner's detention is governed by the post-final-order detention provisions of § 1231(a).

63. The Fifth Amendment's Due Process Clause applies to persons within the United States, including noncitizens. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). The Ninth Circuit has recognized that the government's authority to detain noncitizens remains constrained by due process. *Hernandez v. Sessions*, 872 F.3d 976, 981, 990 (9th Cir. 2017). The procedural safeguards required before deprivation of a protected liberty interest are assessed under *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976).

64. Courts within the Central District of California have recognized that the government's

affirmative decision to release a noncitizen on immigration parole may give rise to a constitutionally protected liberty interest in continued freedom from physical detention. See *Medrano-Rocha v. Santacruz*, No. CV 26-00404-KK-AGR, 2026 WL 411355 (C.D. Cal. Jan. 23, 2026). Such an interest requires constitutionally adequate procedures before the government may extinguish that liberty through renewed detention.

65. Particularly instructive is *Mosqueda Lara v. Venturella*, No. 5:26-cv-04781-DSR, ECF No. 10 (C.D. Cal. Sept. 9, 2026). There, the petitioner had initially presented himself at a port of entry, was subsequently released from immigration detention, and lived in the United States for approximately thirteen years while complying with immigration reporting requirements. After ICE re-detained him without advance notice or an opportunity to contest the deprivation, the court concluded that the government's actions violated procedural due process and ordered immediate release, reinstatement of his prior parole conditions, and restoration of the status quo ante. Although the government failed to respond in that case, the court also independently analyzed the constitutional violation on the undisputed record.

66. The reasoning of *Mosqueda Lara* is particularly relevant here. Like the petitioner in that case, Singh presented himself at a port of entry, was released from immigration custody, complied with government supervision for more than a decade, and was subsequently re-detained without an individualized pre-deprivation hearing. Indeed, Singh's re-detention occurred when he voluntarily appeared for a scheduled affirmative asylum interview, demonstrating his continued compliance with immigration procedures rather than any effort to evade them.

67. The Central District has further recognized that restoring a petitioner to the status quo ante may require immediate release rather than a later administrative procedure conducted while the petitioner remains detained. See *Esmail v. Noem*, No. 2:25-cv-08325-WLH-RAO, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025); *Nazarian v. Noem*, No. 5:25-cv-02694-KK-ADS, 2025 WL 3236209, at *7 (C.D.

Cal. Nov. 3, 2025). The constitutional injury challenged here is the government's deprivation of established liberty without the process required before that deprivation occurred.

68. Petitioner's longstanding compliance, absence of any identified violation of supervision conditions, dismissed 2016 criminal case, family responsibilities, employment, and voluntary appearance for his scheduled asylum interview are directly relevant to the constitutional analysis. Respondents have not disclosed any individualized determination identifying a new danger, flight risk, or exigent circumstance requiring Petitioner's immediate incarceration before he could be heard.

69. The government retains a legitimate interest in enforcing immigration laws and ensuring that noncitizens remain available for immigration proceedings. However, that interest does not automatically justify dispensing with constitutional safeguards where an individual has lived under government-authorized supervision for approximately fourteen years without identified violations. Under *Mathews*, the substantial private interest in freedom from physical confinement, the risk of erroneous deprivation, and the value of pre-deprivation procedures must be weighed against the government's asserted need for immediate detention.

70. Federal district courts retain authority under 28 U.S.C. § 2241 to review whether immigration custody violates the Constitution or laws of the United States. Section 2243 directs courts to dispose of habeas matters as law and justice require. Petitioner's challenge concerns the legality of his detention and the constitutional adequacy of the government's procedures, not judicial substitution of discretion in an ordinary administrative custody decision.

71. Accordingly, Petitioner maintains that Respondents' continued detention violates the Fifth Amendment and the applicable statutory limitations on immigration detention. Because the challenged deprivation occurred without constitutionally adequate pre-deprivation process, Petitioner seeks an order directing his immediate release from ICE custody and restoration of the conditions of liberty under which

he resided before August 20, 2026, together with appropriate protection against renewed detention on the same grounds without constitutionally adequate procedures, absent genuine exigent circumstances.

## **CLAIMS FOR RELIEF**

### **COUNT ONE**

### **Violation of the Fifth Amendment — Procedural Due Process**

### **Unconstitutional Deprivation of Previously Granted Liberty Without Notice or an Individualized Pre-Deprivation Hearing**

72. Petitioner incorporates by reference all preceding paragraphs of this Petition as though fully set forth herein.

73. The Fifth Amendment prohibits the federal government from depriving any person of liberty without due process of law. The Supreme Court has recognized that freedom from physical confinement lies at the core of the liberty protected by the Due Process Clause. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The procedural safeguards required before the government deprives an individual of a protected liberty interest are evaluated under *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976).

74. Petitioner entered the United States through the Nogales, Arizona, port of entry on February 19, 2012. Following brief detention, DHS affirmatively exercised its statutory authority under 8 U.S.C. § 1182(d)(5)(A) to release Petitioner on immigration parole, as documented by his Form I-94. DHS thereafter permitted Petitioner to reside in the community subject to Alternatives to Detention (“ATD”), ICE reporting requirements, and continued immigration supervision.

75. For approximately fourteen years, Petitioner complied with his immigration supervision requirements, attended his ICE appointments, maintained gainful employment, and established substantial family and community ties, including his wife and children. Petitioner did not abscond, violate his reporting obligations, or otherwise engage in conduct demonstrating an unwillingness to

comply with immigration authorities. Although Petitioner was arrested in 2016, the criminal case was dismissed.

76. DHS's affirmative release determination, followed by approximately fourteen years of liberty under government supervision, gave rise to a substantial liberty interest protected by the Fifth Amendment. Courts within the Central District of California have recognized that immigration parole may create a protected liberty interest requiring constitutionally adequate procedures before renewed detention. See *Medrano-Rocha v. Santacruz*, 817 F. Supp. 3d 871, 878–80 (C.D. Cal. 2026).

77. The constitutional significance of Petitioner's established liberty is not necessarily extinguished by the expiration of the original parole authorization. Even where immigration parole has expired by operation of law, the government must independently satisfy applicable constitutional requirements when depriving a previously released individual of physical liberty. See *E.A.M.M. v. Acting or Current Warden*, No. 5:26-cv-03480-PD, ECF No. 20 (C.D. Cal. Sept. 3, 2026).

78. On August 20, 2026, Petitioner voluntarily appeared for a scheduled affirmative asylum interview. Rather than permitting him to continue participating in the immigration process, immigration authorities unexpectedly detained him and transferred him to ICE custody. Petitioner received no advance notice that he would be detained or that his longstanding liberty would be revoked.

79. After being taken into ICE custody, Petitioner requested an explanation for his arrest and presented his employment authorization documentation based on his pending asylum application. ICE officers failed to provide a meaningful explanation identifying any violation of his prior release conditions or any individualized circumstance necessitating immediate detention. Petitioner was not afforded an opportunity to contest the asserted grounds for his incarceration.

80. Respondents provided no individualized pre-deprivation hearing before a neutral decisionmaker, no meaningful opportunity to present evidence of Petitioner's compliance, and no

advance notice permitting him to challenge the proposed deprivation of liberty. Respondents have not identified any exigent circumstance requiring immediate detention before Petitioner could be heard.

81. Under the first *Mathews* factor, Petitioner's private liberty interest is exceptionally substantial. He had lived outside immigration detention for approximately fourteen years, maintained employment, supported his family, and complied with government supervision. His abrupt incarceration deprived him of physical liberty and disrupted his established family and community life.

82. Under the second *Mathews* factor, the risk of erroneous deprivation was substantial because Respondents made no disclosed individualized determination concerning Petitioner's compliance, flight risk, dangerousness, or the necessity of immediate detention. Advance notice and a meaningful opportunity to respond would have permitted consideration of his extensive compliance history, dismissed criminal matter, family responsibilities, employment, and voluntary appearance for his asylum interview.

83. Under the third *Mathews* factor, the government's legitimate interest in immigration enforcement does not establish that immediate detention without prior process was necessary. Petitioner had remained available to immigration authorities for approximately fourteen years. Respondents had ample opportunity to evaluate his circumstances while he remained under supervision and have identified no emergency or materially changed circumstance requiring incarceration before notice and an opportunity to be heard.

84. The Central District of California has granted immediate release where previously released noncitizens were re-detained without constitutionally adequate pre-deprivation procedures. In *Mosqueda Lara v. Venturella*, No. 5:26-cv-04781-DSR, ECF No. 10 (C.D. Cal. Sept. 9, 2026), the court ordered immediate release and reinstatement of prior parole conditions after a previously released noncitizen was re-detained following approximately thirteen years of compliance with immigration

supervision. Although the government's failure to respond left the factual allegations undisputed, the court independently analyzed the procedural due process violation.

85. Petitioner's circumstances closely parallel *Mosqueda Lara*. Like the petitioner in that case, Singh presented himself at a port of entry, was released from immigration custody, lived in the community for more than a decade, and was subsequently re-detained without individualized pre-deprivation procedures. Petitioner's voluntary appearance for a scheduled asylum interview further demonstrates his compliance with the government's immigration process.

86. Respondents' failure to provide constitutionally adequate pre-deprivation procedures violated Petitioner's Fifth Amendment right to procedural due process. A subsequent administrative custody proceeding would not necessarily remedy the completed constitutional injury arising from the government's failure to provide required process before depriving Petitioner of his established liberty.

87. Petitioner therefore requests that this Court grant habeas relief under 28 U.S.C. § 2241, order his immediate release from ICE custody, restore the conditions of liberty under which he resided before August 20, 2026, and prohibit renewed detention on the same grounds without constitutionally adequate pre-deprivation procedures, absent genuine exigent circumstances.

**COUNT TWO**

**Violation of the Fifth Amendment — Substantive Due Process**

**Arbitrary and Unjustified Re-Detention Following Approximately Fourteen Years of Compliance With Government Supervision**

88. Petitioner incorporates by reference all preceding paragraphs of this Petition as though fully set forth herein.

89. The Fifth Amendment prohibits arbitrary deprivations of liberty by the federal government. Immigration detention is civil and must bear a reasonable relationship to legitimate

regulatory purposes rather than operate as punishment. See *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *Demore v. Kim*, 538 U.S. 510, 527–28 (2003).

90. The government's immigration detention authority is substantial but not unlimited. Even where Congress authorizes civil immigration detention, the exercise of that authority remains subject to applicable constitutional constraints. The government must act consistently with the statutory purposes underlying immigration custody and the constitutional protections applicable to the particular detention.

91. DHS previously exercised its statutory authority to release Petitioner on parole and permitted him to remain in the United States under immigration supervision for approximately fourteen years. During that period, Petitioner complied with reporting requirements, maintained employment, supported his family, and remained available for immigration proceedings.

92. Petitioner was not re-detained because he attempted to abscond, failed to appear for an immigration appointment, violated an identified supervision condition, or sustained a new criminal conviction. Instead, immigration authorities detained him when he voluntarily appeared for his scheduled asylum interview on August 20, 2026.

93. Respondents have not disclosed an individualized determination establishing that Petitioner's circumstances materially changed or that continued physical detention was necessary to accomplish a legitimate immigration enforcement objective. The record presently identifies no individualized finding that Petitioner posed a danger to the community or a flight risk requiring immediate incarceration.

94. Petitioner's detention has continued despite his extensive history of compliance, substantial family ties, employment, pending immigration matters, and absence of any identified violation of his prior release conditions. Petitioner contends that, under these circumstances, his renewed detention is arbitrary and disproportionate to any asserted regulatory need.

95. The abrupt deprivation of Petitioner's longstanding liberty, without a disclosed individualized justification and notwithstanding his demonstrated compliance, raises substantial substantive due process concerns. Petitioner does not contend that the government must establish a new criminal offense before exercising lawful immigration detention authority. Rather, he challenges the allegedly arbitrary exercise of that authority in his particular circumstances.

96. To the extent Respondents rely upon mandatory detention under 8 U.S.C. § 1225(b), Petitioner acknowledges that the government's statutory authority and his original arriving-alien classification must be considered in evaluating this claim. Nevertheless, Petitioner maintains that the particular circumstances of his renewed and continuing detention require constitutional scrutiny, including whether the deprivation of his longstanding liberty serves a legitimate nonpunitive purpose.

97. Respondents' continued detention, absent a constitutionally sufficient justification under the circumstances presented, violates Petitioner's substantive due process rights. Petitioner therefore requests immediate release and restoration of his prior supervised liberty, together with appropriate prospective protection against arbitrary re-detention.

**COUNT THREE**

**Violation of the Immigration and Nationality Act**

**Unlawful Exercise of Detention Authority Under 8 U.S.C. §§ 1225(b), 1226(a), and 1182(d)(5)(A)**

98. Petitioner incorporates by reference all preceding paragraphs of this Petition as though fully set forth herein.

99. The INA establishes distinct detention authorities governing applicants for admission, noncitizens awaiting removal determinations, and individuals subject to administratively final removal

orders. These provisions must be interpreted according to their statutory text, structure, and governing judicial precedent.

100. Under 8 U.S.C. § 1182(d)(5)(A), DHS possesses authority to parole applicants for admission into the United States temporarily, on a case-by-case basis, for urgent humanitarian reasons or significant public benefit. DHS exercised that authority when it released Petitioner following his initial detention in February 2012. Petitioner's parole is documented by his Form I-94.

101. Following his release, Petitioner remained in the United States for approximately fourteen years, complied with ICE supervision, and continued pursuing immigration relief. Petitioner has not received any separate written parole-revocation notice associated with his August 20, 2026 re-detention. Petitioner recognizes, however, that parole may terminate automatically upon expiration of the authorized period under 8 C.F.R. § 212.5(e)(1). He therefore challenges Respondents' asserted detention authority and the legal consequences of their renewed custody determination without assuming that his original parole authorization necessarily remained unexpired.

102. The Ninth Circuit has clarified the distinction between detention under 8 U.S.C. § 1225(b)(2)(A) and § 1226(a). In *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160 (9th Cir. 2026), the court rejected DHS's expansive interpretation of § 1225(b)(2)(A) as applied to noncitizens who entered without inspection and were subsequently apprehended in the interior of the United States.

103. The Ninth Circuit distinguished the broad statutory designation of an individual as an “applicant for admission” under § 1225(a)(1) from the separate statutory language governing persons “seeking admission” under § 1225(b)(2)(A). The court's reasoning demonstrates that the statutory classification of an individual does not necessarily resolve the detention authority applicable in every subsequent custodial circumstance.

104. Petitioner acknowledges that *Rodriguez Vazquez* did not decide the precise circumstances presented here. Unlike the plaintiffs in that case, Petitioner originally presented himself at a designated port of entry and was subsequently paroled into the United States. Nevertheless, Petitioner contends that the Ninth Circuit's statutory analysis requires Respondents to establish the applicable legal basis for his present detention rather than rely exclusively upon his original arriving-alien classification without consideration of his subsequent parole and circumstances of re-detention.

105. Petitioner was not apprehended while seeking entry into the United States in August 2026. Rather, he was re-detained during a scheduled affirmative asylum interview after approximately fourteen years of residence under government supervision. Petitioner disputes Respondents' anticipated contention that his original classification as an arriving alien necessarily resolves the statutory authority governing his present detention.

106. The Board of Immigration Appeals addressed detention authority under § 1225(b) in *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025), and *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). Those decisions must be considered in light of controlling Ninth Circuit authority and do not foreclose federal judicial review of Petitioner's statutory and constitutional challenges.

107. DHS's July 8, 2025 Interim Guidance cannot independently expand detention authority beyond that authorized by Congress. Questions concerning the proper interpretation of the INA are ultimately governed by statutory text and controlling judicial precedent. See *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024).

108. The Immigration Judge dismissed Petitioner's removal proceedings on October 5, 2023, and the EOIR Automated Case Information system confirms that an appeal received by the BIA on November 3, 2023, remains pending. The record presently identifies no administratively final order of

removal against Petitioner. Accordingly, Respondents have not established that his detention is governed by 8 U.S.C. § 1231(a).

109. Petitioner contends that Respondents have failed to establish a lawful statutory basis for his renewed and continuing detention under the circumstances presented. To the extent § 1226(a) governs, Respondents' detention decision remains subject to that provision's statutory limitations and the Fifth Amendment. To the extent Respondents invoke § 1225(b), Petitioner preserves his challenge to its application to his particular custody circumstances and maintains his independent constitutional objections.

110. Because Petitioner's continued detention is alleged to exceed Respondents' lawful authority under the INA and violates the constitutional protections governing the deprivation of his previously granted liberty, Petitioner requests habeas relief under 28 U.S.C. § 2241 directing his immediate release and restoration of his prior conditions of immigration supervision.

**PRAYER FOR RELIEF**

Wherefore, Petitioner requests this Court to grant the following:

1. Assume jurisdiction over this Petition pursuant to 28 U.S.C. § 2241 and exercise its authority to remedy Petitioner's unlawful detention;

2. Issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241, determining that Petitioner's re-detention on August 20, 2026, and continued confinement violate the Fifth Amendment's Due Process Clause and applicable provisions of the Immigration and Nationality Act;

3. Declare that Respondents' abrupt deprivation of Petitioner's longstanding liberty, following approximately fourteen years of release on parole and compliance with immigration supervision, without advance notice, an individualized pre-deprivation hearing, or any identified exigent circumstance justifying immediate detention, violates Petitioner's right to procedural due process under

the Fifth Amendment;

4. Declare that Respondents' continued detention of Petitioner, without a constitutionally sufficient individualized justification and notwithstanding his longstanding compliance with immigration supervision, violates the Fifth Amendment's protection against arbitrary deprivation of liberty;

5. Order Respondents to immediately release Petitioner from ICE custody and restore the status quo ante, including the noncustodial conditions of supervision under which Petitioner resided before his August 20, 2026 re-detention, subject to lawful and reasonable reporting requirements consistent with his previously granted liberty;

6. Enjoin Respondents from continuing to detain Petitioner on the basis of the challenged August 20, 2026 re-detention and from imposing additional custodial restrictions inconsistent with the Court's release order;

7. Enjoin Respondents, their officers, agents, employees, successors, and all persons acting in concert or participation with them who receive actual notice of the Court's order from re-detaining Petitioner based on the same circumstances underlying his August 20, 2026 detention without first providing individualized written notice of the asserted grounds for re-detention and a meaningful opportunity to be heard before a neutral decisionmaker, except upon a showing of genuine exigent circumstances or other lawful grounds consistent with the Constitution;

8. Order Respondents to restore Petitioner's previously authorized noncustodial supervision arrangements, including applicable ICE reporting conditions, without requiring Petitioner to undergo a new custodial proceeding as a prerequisite to release;

9. Order Respondents to return Petitioner's personal property, identification documents, employment authorization documentation, and other belongings confiscated in connection with his

August 20, 2026 detention, to the extent such property remains in Respondents' possession and is not otherwise lawfully retained;

10. Order Respondents to file a notice of compliance with the Court within twenty-four (24) hours of Petitioner's release, identifying the date and time of release and confirming restoration of the applicable noncustodial supervision conditions;

11. Award Petitioner reasonable attorneys' fees and costs to the extent authorized by applicable law, including the Equal Access to Justice Act, 28 U.S.C. § 2412, if its requirements are satisfied; and

12. Grant such other and further relief as this Court deems just and proper, consistent with Petitioner's request for immediate release and restoration of his previously granted liberty.

Respectfully,

/s/*Gurpreet Kaur*
Gurpreet Kaur, Esq.
Kaur Legal Group, PC

**VERIFICATION PURSUANT TO 28 U.S.C. § 2242**

I represent Petitioner, and I submit this verification on his behalf. Because Petitioner is detained at the Adelanto Detention Facility and immediate relief is sought, counsel verifies this petition on his behalf pursuant to 28 U.S.C. § 2242. I hereby verify that the factual statements made in the foregoing Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated this 15th day of October, 2026.

/s/ *Gurpreet Kaur*
Gurpreet Kaur, Esq.